IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRIS W. KESSLER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION )<br>)<br>Defendant. ) | 4:09CV3073<br><br><br><br>MEMORANDUM AND ORDER |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). Plaintiff Chris Kessler appeals the Commissioner's decision to deny his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Kessler filed an application for disability benefits on March 9, 2006, and for SSI on March 20, 2006, alleging that he has been unable to work beginning February 28, 2005, due to a disabling condition. Filing No. 12, Social Security Transcript ("Tr.") at 49. Kessler's claims were denied initially and on reconsideration. *Id.* at 19, 20, 54-58, 62-65. Following a hearing, an Administrative Law Judge ("ALJ") found Kessler was not under a disability as defined in the Social Security Act. *Id.* at 8-18. The Appeals Council denied the plaintiff's request for review. *Id.* at 2-5. Kessler then filed this action in the United States District Court for the District of Nebraska. Filing No. 1, Complaint.

## BACKGROUND

Kessler was born in 1960, has a GED, is a veteran of the military, and was formerly employed as a construction framer, grounds maintenance worker, vehicle maintenance worker, tree-service worker, convenience store clerk, van driver, and fast-food worker. *Id.* at 97, 160, 166, 611, 616. At a hearing on March 6, 2008, Kessler testified that he had last worked the previous day "doing tree work, dragging brush," and he lifted 20 to 30 pounds frequently and up to 40 pounds occasionally as part of that job. *Id.* at 630. Kessler submitted pay records and paychecks dated September 10, 2007, to March 9, 2008, showing that he that worked between 4 and 42 hours per week and earned $10.00 per hour during that time period. *Id*. at 67-75. He testified that he averaged 35 hours per week. *Id.* at 629. He testified that he was working only because he had been ordered to obtain employment in order to gain custody of his son. *Id*. at 628. He stated that at the tree-dragging job he misses approximately 4-5 days per month and testified that he did not believe he would be able to perform the job on a sustained basis. *Id.* at 628-30, 633.

He testified he was short of breath and in pain most of the time at that job. *Id.* at 630-31. He stated that the pain was generally at the level of a 7 or 8 on a 1 to 10 scale and that pain radiated down his legs. *Id.* at 632-33. He further stated that cervical spine fusion surgery had alleviated some pain in his arm and weakness in his left side, but that he still had pain in his neck. *Id.* at 632. He testified that he experiences pain all the time, but has especially bad days two or three days a week. *Id.* at 631. In describing daily activities, he stated that walking and grocery shopping are limited by back pain and that washing dishes or doing other household chores causes pain. *Id*. at 598. He testified that he is capable of vacuuming, sweeping, doing dishes, preparing meals and shopping, but

that those activities cause him pain. *Id*. at 596-603. Kessler testified that he has difficulty climbing stairs and has very low energy. *Id.* at 623, 626. He also testified that he is unable to grip with his hands and fingers for more than a few minutes. *Id.* at 625.

The record shows that Kessler was involved in an automobile accident in 1997 and suffered a closed head injury and a spine injury. *Id.* at 530. The medical evidence shows that Kessler was restricted to lifting no more than 10 pounds in 2006. *Id.* at 531, 580. He was diagnosed by a consulting physician, after a physical exam, with degenerative joint disease, spondylolisthesis, history of left arm carpal tunnel syndrome, history of emphysema, and fibromyalgia. *Id.* at 530. The consulting physician reported some restriction on range of motion. *Id.* at 531. Fibromyalgia testing showed 10 positive tender points, but positive control points as well. *Id.* at 535-36. She noted Kessler had emphysema and was out of condition and that those conditions "certainly restrict[ed] his physical activity." *Id.* at 531. She recommended that he quit smoking and start exercising. *Id.*

Medical records also show that, over the years, Kessler has been diagnosed with and treated for chronic obstructive pulmonary disorder, gastroesophageal reflux disorder, coronary artery disease, brachial neuritis or radiculitis, cervical radiculopathy, myalgia and myositis, and alcohol abuse in remission. *Id.* at 545, 562. An MRI in May of 2006 reveals "a bulging disk with annular tear of L4-L5 with mild bilateral neural foraminal stenosis," "central to left lateral disk herniation at L5-S1 with moderate left neural foraminal stenosis,"

3

and "Schorl's nodes of L4 and L1."[1]  *Id.* at 547.  The record also shows a provisional diagnosis of carpal tunnel syndrome, and diagnoses of median neuropathy and ulnar neuropathy.  *Id.* at 569, 571, 574.  The record also shows that Kessler was offered steroid injections to alleviate back pain, but declined.  *Id.* at 259.

In June of 2006, Kessler underwent a cervical discectomy and fusion with instrumentation a C5-6.  *Id.* at 424.  After the surgery, he reported continued neck pain, but stated that pain and weakness in his arms had resolved.  *Id.* at 269, 294.  In 2007, a spirometry revealed a moderate obstructive ventilator defect and significant improvement postbronchodilator.  *Id.* at 257.

A family practitioner medical consultant reviewed Kessler's records and provided an assessment of his residual functional capacity in September of 2006.  *Id.* at 465-73.  She found Kessler's back and neck pain called for the following exertional limitations: occasionally lifting 20 pounds and frequently lifting 10 pounds; standing or sitting for about 6 hours in an 8-hour workday with no limits on pushing or pulling.  *Id.* at 468.  She also found Kessler's fine manipulation or fingering was limited on the left due to carpal tunnel syndrome.  *Id.* at 469.  She found no documentation in the medical records to support a diagnosis of fibromyalgia.  *Id.* at 473.  There is no residual functional capacity assessment or other assessment by a treating physician in the record.  The record indicates that the treating physician does not do consultative examinations.  *Id.* at 475.

---

[1] A "Schmorl nodule" is a "prolapse of the nucleus pulposus through the vertebral body endplate into the spongiosa of an adjacent vertebra."  Stedman's Medical Dictionary (27th ed. 2000) at STEDMANS 275540.

A vocational expert also testified at the administrative hearing. *Id*. at 633-41. He testified that the strength demands of Kessler's prior work as a stock clerk and fast-food worker, as Kessler testified he performed them, would be classified as light, rather than medium work, and that the strength demands of Kessler's work as a tree-handler would be classified as medium rather than heavy. *Id.* at 632-34. He was asked whether a hypothetical person Kessler's age, with his education and work experience, limited to lifting and carrying 20 to 25 pounds occasionally, and 10 pounds or less frequently, standing and walking, combined, up to 6 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday, with some pain and discomfort, and limited to work that required only occasional climbing (slowly and with use of a handrail), reaching, balancing, stooping, kneeling, crouching, or crawling, who could not work on ladders, scaffolds or ropes and would need to avoid concentrated exposure to hazards such as unprotected heights, fast or dangerous machinery, high vibration, dust, fumes, odors, gases, and poor ventilation, and who could engage in frequent, but not repetitive, fingering, with no visual or communication limitations, could perform any of Kessler's prior jobs. *Id.* at 636-37. The vocational expert testified that such a hypothetical person could perform the requirements of Kessler's past work as a fast food worker and as a van driver, as Kessler performed them. *Id.* at 637. In addition, he testified if the hypothetical person were limited to sedentary jobs (lifting and carrying 10 to 15 pounds on occasion, 10 pounds frequently, and standing and walking 2 to 3 hours), he could not perform any of Kessler's former jobs, but there would still be unskilled, sedentary jobs existing in significant numbers in the national economy that the person could perform. *Id.* at 638. He identified two of those positions: call-out operator and surveillance systems monitor. *Id.* at 638-39. The

vocational expert stated that these opinions would not change if Kessler's testimony were fully credited, but that if 4 to 5 absences per month were necessary, there would be no jobs in the national economy that a person in Kessler's position could perform. *Id.* at 639-40.

The ALJ noted that the Kessler had engaged in substantial gainful activity since his alleged onset date, in that he had submitted paychecks from September 2007 to March 2008 and testified at the hearing that he was working full-time as a tree dragger. *Id.* at 13. The ALJ nevertheless proceeded to consider the next steps of the sequential evaluation. *Id.* The ALJ found Mr. Kessler has "fibromyalgia, emphysema, [and] degenerative disc disease" which "cause significant limitation in the claimant's ability to perform basic work activities." *Id.* at 14. The ALJ also found that, despite these limitations, Kessler has the residual functional capacity to perform the full range of light work. *Id.* He concluded that Kessler is capable of performing past relevant work as a fast food worker and taxi driver. *Id.* at 17.

The ALJ also found that vocational testimony established that Kessler's also had the ability to "perform" the jobs of "call out operator, 237.367-014 . . . [and] surveillance system monitor 379.637-010" and that "[t]herefore, even if the burden were shifted to the commissioner to show other work that the claimant could perform [at step five of the sequential process] the burden would be satisfied." *Id.* at 18.

Kessler contends that the ALJ's determination is not supported by substantial evidence. He argues that the jobs the ALJ cited do not qualify as past relevant work under 20 C.F.R. § 404.1565 and are outside the residual functional capacity ("RFC") found by the ALJ. Further, Kessler argues that the ALJ failed to perform the analysis required under Social Security Ruling ("SSR") 82-62 in comparing Mr. Kessler's RFC with the demands

6

of the past work in question. He also argues that the ALJ's determination of residual functional capacity and credibility findings are incorrect.

## DISCUSSION

**Law**

In an appeal of the denial of Social Security disability benefits, this court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole'" and "'may not reverse . . . merely because substantial evidence would support a contrary outcome.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir.2010)).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). A decision supported by substantial evidence may not be reversed, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the Commissioner's action." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (internal quotations and citations omitted). The court must consider evidence that detracts from the Commissioner's decision in addition to evidence that supports it. *Finch v. Astrue*, 547 F.3d

933, 935 (8th Cir. 2008). The court must also determine whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). The court does not owe deference to the Commissioner's legal conclusions. *See Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008).

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To determine whether a claimant is disabled, the Commissioner must perform the five-step sequential analysis described in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Specifically, the Commissioner must determine: "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to [his] past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Tilley v. Astrue*, 580 F.3d 675, 678 n.9 (8th Cir. 2009); *see also Kluesner v. Astrue*, 607 F.3d 533, 536-37 (8th Cir. 2010). "Through step four of this analysis, the claimant has the burden of showing that [he] is disabled." *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). After the analysis reaches step five, however, "the burden shift[s] to the Commissioner to show that there are other jobs in the economy that [the] claimant can perform." *Id.* The regulations explicitly provide that if the Social Security Administration ("SSA") finds that a claimant is disabled

8

or not disabled at a step, the SSA makes its determination or decision and it does not go on to the next step. 20 C.F.R. § 404.1520(a)(4).

At step one of the sequential analysis, the claimant has the burden of showing he is not performing substantial gainful activity. *See* 20 C.F.R. § 404.1571; *Petersen v. Chater*, 72 F.3d 675, 677 (8th Cir. 1995) (stating that the focus under the Social Security Act is whether a claimant has proved his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment"); *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (claimant has burden of proving disability); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (claimant engaged in substantial gainful activity will not be found disabled no matter how severe his impairments). The concept of substantial gainful activity involves the amount of compensation and the substantiality and gainfulness of the activity itself. 20 C.F.R. § 404.1532(b); *Chicager v. Califano*, 574 F.2d 161, 163 (3d Cir. 1978). Substantial gainful activity is work that is both substantial, i.e., it involves "significant physical or mental activities" even if done part-time or if the claimant does less, gets paid less, or has less responsibility than when he worked before; and gainful, i.e., it is "work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a), (b); *Petersen*, 72 F.3d at 677.

Several factors are considered in determining whether an individual has the skills and ability to work at a substantial gainful activity level, including the nature of the work, the performance level, the existence of special conditions, and the time spent at work. 20 C.F.R. § 404.1573. Although "the amount of earnings is relevant in determining disability, the mere existence of some earnings is not dispositive." *Chicager*, 574 F.2d at 163.

9

Generally, activities that result in substantial earnings would establish ability to engage in substantial gainful activity; however, the fact that an individual's activities result in earnings which are not substantial does not establish the individual's inability to engage in substantial gainful activity. *Id.*

The regulations provide that earnings in excess of a certain level "shall be deemed to demonstrate ability to engage in substantial gainful activity, unless there is affirmative evidence that the work activities establish the contrary." *Chicager*, 574 F.2d at 164-65. Thus, these earnings guidelines operate in the nature of a presumption. *See id.*; *Katz v. Secretary of Health and Human Servs.*, 972 F.2d 290, 293 (9th Cir. 1992); *Josefowicz v. Heckler*, 811 F.2d 1352, 1356 (10th Cir.1987) (noting that there is a presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines); 20 C.F.R. §§ 404.1574(b)(2)(ii), 404.1575(b)(2). For calendar years beginning January 1, 2001, the regulations provide that if an individual's earnings from work averaged more than "an amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998," those earnings would ordinarily show that the claimant engaged in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2)(ii)(B); *see, e.g., Anderson,* 726 F.2d at 456. The Social Security Administration lists the yearly national average wage index at: http://www.ssa.gov/OACT/COLA/AWI.html (last visited March 29, 2010). For the time period relevant to this case, the amounts necessary to create the presumption are $900 per month in 2007 and $940 per month in 2008. See http://www.ssa.gov/OACT/COLA/sga.html. The proper method of determining whether a claimant is engaged in

substantial gainful activity is to average the claimant's earnings over only the months worked. *Anderson,* 726 F.2d at 457.

This presumption of substantial gainful activity is not to be rigidly applied, and it may be rebutted. *Thompson v. Sullivan,* 928 F.2d 276, 277 (8th Cir. 1991). The claimant may rebut the presumption with evidence of his inability to be self-employed or to perform the job well, without special assistance, or to perform for only brief periods of time. *Anderson,* 726 F.2d at 456 (8th Cir.1984): *see also Payne v. Sullivan,* 946 F.2d 1081, 1084 (4th Cir. 1991) (noting that the nature of the work, how well the claimant performs, whether the claimant is self-employed, and the time spent in work are "precisely the factors that a claimant would have to rely on in rebutting the presumption that is created by the earnings guidelines"). A claimant with earnings above the statutory maximum with no evidence of any special accommodations can be found to have engaged in substantial gainful activity. *See, e.g., Anderson,* 726 F.2d at 458 (finding claimant did not have to be closely supervised, was considered average or above average in her job performance, and was able to perform the duties assigned to her); *Byington v. Chater,* 76 F.3d 246, 250-251 (9th Cir. 1996) (finding substitute bus driver who earned more than statutory amount did not show that he was not performing substantial gainful activity because he offered "no indication that he was given any special consideration in performing his job" or that he was not required to perform the same job functions as any other driver); *Keyes v. Sullivan,* 894 F.2d 1053, 1056 (9th Cir. 1990) (finding claimant's administrative duties not subject to any special conditions).

At step four of the sequential process, the ALJ must consider whether a claimant's impairments keep him from doing past relevant work. 20 C.F.R. § 404.1520(e)). The past

work must have been done within last 15 years, must have lasted long enough for a claimant to learn it, and must have been substantial gainful employment in order to be considered relevant employment. *Vincent v. Apfel*, 264 F.3d 767, 769 (8th Cir. 2001). A claimant's residual functional capacity ("RFC") is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545. A claimant is not disabled if he retains the residual functional capacity to perform: 1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) (quoting Social Security Ruling ("SSR") 82-61); *see also Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled."). It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001). A claimant's residual functional capacity is a medical question; therefore, "[s]ome medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claiman's ability to function in the workplace." *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (citations and quotation marks omitted). The RFC must be assessed "based on all relevant evidence," however. *Id.* (citation omitted). Thus, "[i]n evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." *Id.* (citations omitted). An ALJ may consider vocational

expert testimony at step four of the evaluation process. *Wagner v. Astrue*, 499 F.3d at 853-54.

"[A]n ALJ has an obligation to 'fully investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant [him]self is capable of doing before he determines that [he] is able to perform her past relevant work.'" *Groeper v. Sullivan*, 932 F.2d 1234, 1238 (8th Cir. 1991) (quoting *Nimick v. Secretary of Health and Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989)). "A conclusory determination that a claimant can perform past work without these findings . . . does not constitute substantial evidence that the claimant is able to return to his past work." *Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997) (quoting *Groeper*, 932 F.2d at 1239). If an ALJ fails to make the necessary findings, reversal is required unless the claimant suffered no prejudice, for example, a reversal is unnecessary if the record contains substantial evidence that the claimant can perform past work. *See, e.g., Battles v. Sullivan*, 902 F.2d 657, 659-660 (8th Cir. 1990).

Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility. *Wagner*, 499 F.3d at 851. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. *Id.* The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of

medication; and 5) functional restrictions. *Id.* (listing the factors discussed in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984), or "the *Polaski* factors"). Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Id.*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218. "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." *Singh v. Apfel,* 222 F.3d 448, 453 (8th Cir. 2000). "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." *Guilliams v. Barnhart,* 393 F.3d 798, 802 (8th Cir. 2005). An ALJ need not explicitly discuss each *Polaski* factor. *Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005).

## DISCUSSION

The court has carefully reviewed the record and finds that the ALJ's denial of benefits should be affirmed. In this case, the ALJ found at step one that Kessler had engaged in substantial gainful activity, but then proceeded to consider the other steps in the sequential analysis, determining that Kessler was not disabled at step four of the process. Under the regulations, once he determined that Kessler was engaged in substantial, gainful employment, the ALJ should have terminated the analysis because a claimant engaged in substantial gainful activity cannot be found disabled, no matter how severe the impairments. Though not explicitly stated, the court could interpret the ALJ's consideration of the subsequent steps as an implicit finding that Kessler rebutted the presumption that he has the ability to engage in substantial gainful activity that is created by his earnings record. At that point in the analysis, the burden is on Kessler to show that

he is not able to engage in substantial gainful employment by reason of his impairments. In either event, based on the record, Kessler has not met his burden.

Kessler earned over $14,000.00 working as a tree hauler from sometime in the summer of 2007 to the date of the hearing in march of 2008. Consequently, his earnings exceeded the $900 to $940 per month necessary to trigger the presumption. Earnings records reflect that Kessler worked close to 40 hours in most of the weeks he worked. He testified that he sometimes had to miss work because of pain, but there is no evidence that he was likely to be disciplined or fired for doing so. He testified that he was tired and fatigued, but that he continued to work because he had to in order to gain custody of his son. There is no evidence that Kessler was given any special treatment or accommodation at work and he testified that he normally lifted or carried 20 to 30 pounds. There is no evidence that Kessler's performance was unsatisfactory or that he was working in a sheltered or special environment. The court finds that Kessler has not rebutted the presumption created by his earnings record and has not sustained his burden to prove that he cannot engage in substantial gainful employment at step one of the sequential evaluation.

Further, the court agrees with the ALJ's credibility assessment. The ALJ properly discounted the plaintiff's subjective complaints of pain, noting several inconsistencies in the record. Notably, Kessler was able to work at a strenuous job. Even if his work as a tree hauler were not enough to disqualify him from being found disabled, it undermines the credibility of his subjective complaints of disabling pain. Although there is evidence that Kessler has severe impairments that affect his activities, the evidence does not support a finding that Kessler suffers from pain to a degree that would preclude any employment. Evidence that he has not followed doctors' recommendations to quit smoking, that he takes

few pain medications, and has declined steroid shots for back pain further undermines the credulity of his complaints of constant, unrelenting pain.

Even if Kessler had met his burden at step one, the court would agree with the ALJ's alternative findings that either Kessler could return to his prior employment or that, if he could not, there are other jobs in the national economy that he could perform. Substantial evidence in the record support the ALJ's RFC determination and there is nothing to the contrary from a treating physician. Although there is evidence that Kessler was once restricted to a 10-pound weight limitation, that recommendation predated his neck surgery and there is no indication that it was a permanent restriction. Further, the vocational expert testified that even if Kessler's complaints were fully credited, he could perform jobs that exist in the national economy. Under the circumstances, the court finds that substantial evidence in the record supports the AlJ's findings and the ALJ's decision should be affirmed. Accordingly,

IT IS ORDERED:

1.  The decision of the Commissioner of the Social Security Administration to deny benefits to the plaintiff is affirmed.

2.  The plaintiff's appeal of that decision is dismissed.

DATED this 30th day of March, 2011.

BY THE COURT:

s/Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

17